**COMP**
SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel: (702) 360-6200
Fax: (702) 643-6292
Chattahlaw@gmail.com
*Attoney  for Plaintiffs*

JOSEPH S. GILBERT, ESQ.
Nevada State Bar No.: 9033
JOEY GILBERT LAW
405 Marsh Avenue
Reno, Nevada 89501
Tel: (775) 284-7700
Fax: (775) 284-3809
Joey@joeygilbertlaw.com
*Attorney for Plaintiffs*

## UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| JANE DOE as Guardian of  J. DOE, a minor, and in her individual capacity, | Case No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| WASHOE COUNTY SCHOOL DISTRICT, a political subdivision of the State of Nevada, its BOARD OF TRUSTEES, and its SUPERINTENDENT, DR. SUSAN ENFELD, DOES I-XX and ROE entities I-XX. | **JURY DEMAND** |
| Defendants. | |

## COMPLAINT FOR TEMPORARY
### RESTRAINING ORDER, DECLARATORY JUDGMENT, AND PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

COME NOW, Plaintiffs, Jane Doe, parent and guardian of minor J. Doe, who bring this action on behalf of themselves (collectively "PLAINTIFFS") by and through the undersigned attorneys of record SIGAL CHATTAH, ESQ. of CHATTAH LAW GROUP and JOSEPH S. GILBERT, ESQ. of JOEY GILBERT LAW, respectfully request this Court to issue a Temporary Restraining Order, Declaratory Judgment, and Preliminary and Permanent Injunctive Relief and Damages.  In support thereof, Plaintiff alleges against named and unnamed Defendants as follows:

**PRELIMINARY STATEMENT**

1.     Plaintiffs bring this action to invalidate and enjoin Washoe County School District and collectively Defendants, from enforcing Regulation 5161 entitled **GENDER IDENTITY AND GENDER NON-CONFORMITY – STUDENTS.** This regulation establishes protocols and informs staff regarding transgender and gender non-conforming students in the Washoe County School District (hereinafter the "District" or "WCSD" *inter alia*).

2.     Plaintiffs bring this action to invalidate and enjoin Washoe County School District and collectively Defendants, from enforcing Regulation 9200 entitled **HARASSMENT AND DISCRIMINATION PROHIBITED,** as applied to the terms and conditions stated in Regulation 5161.

3.     Defendants have exceeded the bounds of legitimate pedagogical concerns and usurped the role of Plaintiffs, and other parents in Washoe County to direct the education and upbringing of their children, make medical and mental health decisions for their children, and to promote and preserve family privacy and integrity.

4.      Defendants' protocol and practice of concealing from parents information related to their children's gender identity and efforts to affirm a discordant student gender identity at school violates parents' fundamental rights under the United States and Nevada constitutions and violates children's reciprocal rights to the care and custody of their parents, familial privacy, and integrity. It also violates their fundamental right to free exercise of religion under the United States and Nevada constitutions.

5.      Plaintiffs are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 on behalf of themselves and their minor children, for violation of their constitutional rights. Plaintiffs are seeking injunctive and declaratory relief and damages under 42 U.S.C. §1983 for violation of their constitutional rights.

6.      Plaintiffs also seek costs and attorneys' fees pursuant to 42 U.S.C. §1988.

## I.      The Growing Movement to Exclude Parents from Decisions Concerning Gender Identity

7.      "[T]he interest of parents in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme] Court." *Troxel v. Granville*, 530 U.S. 57, 65 (2000) (plurality). Children are "not the mere creature of the state," *Pierce v. Soc'y of the Sisters of the Holy Names of Jesus & Mary*, 268 U.S. 510, 535 (1925), and the "right[] … to raise one's children ha[s] been deemed 'essential'" and one of the "'basic civil rights of man,'" *Stanley v. Illinois*, 405 U.S. 645, 651 (1972). These parental rights are rooted in the "historical[] … recogni[tion] that natural bonds of affection lead parents to act in the best interests of their children." *Parham v. J. R.*, 442 U.S. 584, 602 (1979) (citing 1 W. Blackstone, Commentaries, 447; 2 J. Kent, Commentaries on American Law, 190).

8.    Thus, "'[i]t is cardinal'" that "'the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder.'" *Troxel*, 530 U.S. at 65-66 (quoting *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)). "This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Wisconsin v. Yoder,* 406 U.S. 205, 232 (1972).

9.    The right of parental control is particularly strong in circumstances involving "fundamental values" and "intimate decision[s]." *Arnold v. Bd. of Educ. of Escambia Cnty. Ala.*, 880 F.2d 305, 313 (11th Cir. 1989) (parents' rights protect "the opportunity to counter influences on the child the parents find inimical to their religious beliefs or the values they wish instilled in their children"); *see also H. L. v. Matheson*, 450 U.S. 398, 410 (1981) (parents' rights "presumptively include[ ] counseling [their children] on important decisions"). In such circumstances, parents are presumed to be fit to make decisions for their children absent strong evidence to the contrary. *See Parham*, 442 U.S. at 602- 03.

10.    The Supreme Court has paid special attention to the rights of parents "in cases involving parent-state conflicts in the areas of medical care and education." *Arnold*, 880 F.2d at 312-13. Indeed, "[i]t is not educators, but parents who have primary rights in the upbringing of children. School officials have only a secondary responsibility and must respect these rights." *Gruenke v. Seip*, 225 F.3d 290, 307 (3d Cir. 2000). "Public schools must not forget that '*in loco parentis*' does not mean displace parents." *Id.*

11.    A child's gender identity implicates the most fundamental issues concerning the child, including the child's religion, medical care, mental health, sense of self, and more. Yet despite "extensive precedent" that parents must be involved in decisions concerning these types

of issues, *Troxel*, 530 U.S. at 66 (listing cases), school districts across the country are increasingly excluding parents from decision making when gender identity is involved. "In the past few years, school districts nationwide have quietly adopted policies requiring staff to facilitate and 'affirm' gender identity transitions at school without parental notice or consent— and even in secret from parents." Luke Berg, *How Schools' Transgender Policies Are Eroding Parents' Rights*, 1, American Enterprise Institute, (Mar. 2022), https://bit.ly/39s1GQF.

12.     Under parental exclusion policies, "[e]ducators and staff," not parents, "work closely with the student to determine what changes are necessary . . . to ensure their safety and well-being." GLSEN & National Center for Transgender Equality, *Model Local Education Policy on Transgender and Non-Binary Students*, 7-8 (Sept. 2018), https://bit.ly/3PHTyv9. Often, that process is formalized in a "Gender Support Plan" created by the school for the child.

13.     These exclusionary policies are not just unconstitutional; they are harmful to both parents and children. "Parents across many political beliefs argue that they can't be supportive if no one tells them that their child came out." St. George, *supra*. According to Erica Anderson, a clinical psychologist who identifies as a transgender woman and is the former president of the U.S. Professional Association for Transgender Health, "leaving parents in the dark is not the answer." *Id*. "If there are issues between parents and children, they need to be addressed." *Id*. Such secrecy "only postpones . . . and aggravates any conflict that may exist." *Id*. In a world in which schools "routinely send notes home to parents about lesser matters," such as "playground tussles, missing homework, and social events," there is absolutely no justification for withholding such fundamentally important information from their parents. *Id*.

14.    Parental exclusion policies pose significant risks for parents of children on the autism spectrum in particular. Children on the spectrum are far likelier to identify as transgender or nonbinary than other children. *See, e.g.*, Varun Warrier, et al., *Elevated Rates of Autism, Other Neurodevelopmental and Psychiatric Diagnoses, and Autistic Traits in Transgender and Gender-Diverse Individuals*, (Aug. 2020), https://bit.ly/3QUc3Oa. Strong parent-child relationships are critical for their development.

15.    Parental exclusion policies "run[] directly against a strong body of case law recognizing parents' constitutional rights to raise their children." Berg, *supra*, at 2. Nevertheless, they have proliferated to school districts across the country, including Washoe County.

## II.    The First Amendment Rights of Students in Public Schools

16.    Public-school students have First Amendment rights, and those rights do not disappear "at the schoolhouse gate." *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969). Because "America's public schools are the nurseries of democracy," students must be free to express their opinions, even if their views are "unpopular." *Mahanoy Area Sch. Dist. v. B.L. by and through Levy*, 141 S. Ct. 2038, 2046 (2021). Protecting unpopular speech in public schools "ensur[es] that future generations understand the workings in practice of the well-known aphorism, 'I disapprove of what you say, but I will defend to the death your right to say it.'" *Id.*

17.    Despite these well-established rights, schools often seek to stamp out controversial student expression. Speech codes are the tried-and-true method of suppressing unpopular student speech. They prohibit expression that would otherwise be constitutionally protected. *See* Foundation for Individual Rights in Education, *Spotlight on Speech Codes 2021*, 10, https://bit.ly/3pdQ09E. Speech codes punish students for undesirable categories of speech such as "harassment," "bullying," "hate speech," and "incivility." *Id.* Because these policies

impose vague, overbroad, content-based (and sometimes viewpoint-based) restrictions on speech, federal courts regularly strike them down. *Id.* at 10, 24; *Speech First v. Fenves*, 979 F.3d 319, 338-39 n.17 (5th Cir. 2020) (collecting "a consistent line of cases that have uniformly found campus speech codes unconstitutionally overbroad or vague").

18.    Schools are increasingly adopting speech codes regarding gender identity to compel students to affirm beliefs they do not hold and that are incompatible with their deeply held convictions. So-called "preferred pronouns policies" are an increasingly used method of compelling student speech. "Preferred pronoun policies" subject students to formal discipline for referring to other students according to the pronouns that are consistent with their biological sex rather than their gender identity. Under these types of policies, a student who uses "he" or "him" when referring to a biological male who identifies as a female will be punished for "misgendering" that student. *See, e.g.*, Rick Esenberg & Luke Berg, *The Progressive Pronoun Police Come for Middle Schoolers*, The Wall Street Journal, (May 23, 2022), https://on.wsj.com/3NTV50b.

1.    Plaintiff JANE DOE is a resident of Washoe County, Nevada and is the legal guardian and custodian of minor, J. Doe.

2.    Nearly a century of Supreme Court precedent makes two things clear: parents have a constitutional liberty interest in the care, custody, and control of their children, and students do not abandon their First Amendment rights at the schoolhouse gate.

3.    The Washoe County School District is flouting both of these constitutional guarantees through its recent adoption of Administrative Regulation 5161 GENDER IDENTITY AND GENDER NON-CONFORMITY – STUDENTS (hereinafter "The Regulation" and "5161" *inter alia*)

4.      This Regulation authorizes children to make fundamentally important decisions concerning their gender identity without any parental involvement and to then hide these decisions from their parents.

5.      Per the Policy, Transgender and gender non-conforming students have a right to privacy, including keeping private their sexual orientation, gender identity, transgender status, or gender non-conforming presentation at school.

6.      Transgender and gender non-conforming students have the right to discuss and express their gender identity and expression openly and to decide when, with whom, and how much to share their private information.

7.      Reg 5151 provides that "[S]taff **shall not disclose information** that may reveal a student's transgender or gender non-conforming status to others, **including parents/guardians** or other staff members, unless there is a specific 'need to know,' they are legally required to do so, or the student has authorized such disclosure." [*Emphasis added*]

8.      Reg 5161 provides "[S]taff must be mindful of the confidentiality and privacy rights of students when **contacting parents/guardians so as to not reveal, imply or refer to a student's** actual or perceived sexual orientation, gender identity, or gender expression." [*Emphasis added*]

9.      Reg 5161 provides "[S]tudents have the right to be addressed by the names and pronouns that correspond **to their gender identity**." [*Emphasis added*]

10.      Reg 5161 provides "[U]sing the student's declared name and pronoun promotes the safety and wellbeing of the student."

11.      Reg 5161 provides "[W]hen possible, the requested name shall be included in the District's electronic database in addition to the student's legal name, in order to inform faculty

and staff, to include substitute teachers and classroom volunteers, of the name and pronoun to use when addressing the student."

12.    Reg 5161 provides "[A] student is not required to change his/her official school record or obtain a court-ordered name or gender change in order to be addressed at school by the name and pronoun which corresponds to their gender identity. Such a request may be made by the student or by the student's parent/guardian."

13.    Reg 5161 provides "[S]tudents shall **have access to the restroom that corresponds to their gender identity** as expressed by the student and asserted at school." [*Emphasis added*]

14.    Reg 5161 provides "[T]ransgender and gender non-conforming students **shall not be forced to use the restroom corresponding to their physiological or biological sex at birth**, nor an alternative restroom such as in the health clinic." [*Emphasis added*]

15.    Reg 5161 provides "[S]tudents shall have access to use facilities that **correspond to their gender identity** as expressed by the student and asserted at school, irrespective of the gender listed on the student's records, including but not limited to locker rooms." [*Emphasis added*]

16.    Reg 5161 provides "[T]ransgender and gender non-conforming students **shall not be forced to use the locker room corresponding to their physiological or biological sex** at birth." [*Emphasis added*]

17.    Reg 5161 provides "[T]ransgender and gender non-conforming students shall be permitted to participate in **physical education classes** and intramural sports in a manner that is **consistent with their gender identity**." [*Emphasis added*]

18.     Reg 5161 provides "[T]he District shall not implement a dress code that is gender-based."

19.     Reg 5161 provides "[T]ransgender and/or gender non-conforming students have the right to dress in accordance with the gender identity or gender expression that they consistently assert at school and within the requirements of the school's dress code or site-based school uniform policy."

20.     Reg 5161 provides Yearbook Photos -Schools shall offer one of two alternatives in order to accommodate the needs of transgender and gender non-conforming students: (1) Allow students the option to select their preferred picture attire or "uniform", regardless of their biological sex and which is consistent with the student's asserted gender identity; or (2) Adopt a standardized, gender neutral picture "uniform" such as a cap and gown.

21.     These actions under the Regulation can happen without **any knowledge or input** from the child's parents.

22.     Instead, these decisions will be made solely by the child and "school administrators and/or school counselors."

23.     And it is not just secrecy through silence; the District will withhold this information even if it is specifically requested by parents.

24.     Under the Regulation, the District will not tell parents whether their child is accommodated under the regulation, whether the child has made requests concerning their gender identity, or any other information that would reveal the child's "transgender status."

25.     Parents are completely and purposely left in the dark. The Regulation plainly violates parents' rights under the Fourteenth Amendment.

25.    Washoe County School District has displayed a similar disregard for students' First Amendment rights. The Policy punishes students for expressing their sincerely held beliefs about biological sex and compels them to affirm the beliefs of administrators and their fellow students.

26.    Specifically, the Regulation prohibits speech that doesn't "respect a student's gender identity" and "misgendering," which is defined as "intentionally or accidentally us[ing] the incorrect name or pronouns to refer to a person.".

27.    The Regulation further states "[T]he intentional or persistent refusal to respect a student's gender identity, such as by referring to the student by a name or pronoun that does not correspond to the student's gender identity, may be considered a violation of Board Policy 9200, Harassment and Discrimination Prohibited, as well as this administrative regulation.".

28.    Any individual's failure to adhere to Reg 5161, submits them to punitive action under Washoe County School Board Policy 9200 entitled "Harassment and Discrimination Prohibited".

29.    This speech code blatantly violates the First and Fourteenth Amendments.

30.    Plaintiffs bring this action to protect parents' rights to raise their children and students' rights to freedom of expression.

## PARTIES

1.    Plaintiff JANE DOE is a resident of Washoe County, with her minor child J. Doe attending Washoe School District.

2.    Defendant WASHOE COUNTY SCHOOL DISTRICT is the public school district for Washoe County, Nevada. Washoe County School District manages 112 public schools serving 64,584 students.

3.   Defendant SUSAN ENFELD is the Superintendent of WASHOE COUNTY School District. In that role, ENFELD is responsible for the oversight and enforcement of all WCSD policies, including the Regulation challenged here. ENFELD is sued in her official capacity.

4.     Defendants BOARD OF TRUSTEES are responsible for the enactment and oversight of all WCSD policies, including the Regulation challenged here. The Board Defendants are sued in their official capacities.

## NATURE OF ACTION AND JURSIDICTION

1.     This is a civil action under 42 U.S.C § 1983 seeking damages and injunctive relief against Defendants for committing acts, under color of law, with the intent and for the purpose of depriving Plaintiffs of rights secured under the Constitution and laws of the United States; retaliating against Plaintiffs; and for refusing or neglecting to prevent such deprivations and denials to Plaintiff.

2.      This action arises under 42 U.S.C. § 1983 in relation to Defendants' deprivation of Plaintiffs' Constitutional rights to Due Process and Equal Protection under the Fifth and Fourteenth Amendments, and their rights against Free Speech and Free Exercise under the First Amendment to the U.S. Constitution. Accordingly, this Court has Federal Question Jurisdiction under 28 U.S.C. §§ 1331 and 1343.

3.     This Court has authority to award the requested declaratory relief under 28 U.S.C. § 2201; the requested injunctive relief and damages under 28 U.S.C. § 1343(a); and attorneys' fees and costs under 42 U.S.C. § 1988. Plaintiffs seek damages and declaratory and injunctive relief accordingly.

4.     The District of Nevada is the appropriate venue for this action

pursuant to 28 U.S.C. §§ 1391(b)(1) and (2) because it is the District in which Defendants either maintain offices or do substantial official government work in, exercise their authority in their official capacities, and will continue to enforce the Orders; and it is the District in which substantially all of the events giving rise to the claims occurred.

5.      At all times pertinent herein, Defendants were agents, servants, employees, or joint venturers of every other Defendant, and at all times mentioned herein were acting within the scope and course of said agency, employment, or joint venture, with knowledge and permission and consent of all other named Defendants. Whenever and wherever reference is made in this Complaint to any acts by Defendants, such allegations and references shall also be deemed to mean the acts of each Defendant acting individually, jointly or severally.

6.      All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

7.      The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants DOES 1 through 100, are unknown to Plaintiffs, who therefore sue said Defendants by such fictitious names. Plaintiffs are informed and believe and thereon allege that each of the Defendants designated herein as a DOE is responsible in some manner for the events and happenings herein referred to. As such, Plaintiffs will seek leave of Court to amend this Complaint to insert the true names and capacities of said Defendant as they become identified.

///

## SUMMARY OF FACTS

1.     Plaintiff Minor J. Doe is a student at Depoali Middle School, located in the Washoe County School District

2.     On or about January 17, 2023, *J. Doe* texted his mother from school, advising her that his teacher had hung a lesbian flag in the classroom and sent a photograph of same.

3.     Plaintiff, Jane Doe, herein mother of minor J. Doe, immediately inquired of the school principal whether a Lesbian Flag was allowed to be hung in the classroom per WCSD policy and was advised hanging the flag was prohibited, but using students "preferred pronouns" was in accordance to the "gender policy" in place through Washoe County School District.

4.     Plaintiff was further advised that these teachers were known as "Brave Space" teachers and that under Reg 5161, said information will be kept private from students' parents.

5.     WCSD District policy 5161 Gender Identity and Gender Non-conformity-Students, passed in 2015 and revised in 2019. (passed through Board Policy 9070 giving discretion to the Superintendent to pass administrative regulation policies).

6.     This WCSD policy was in place to help support these students while maintaining confidentiality away from the parents/or legal guardians.

7.     Plaintiff was further advised that "brave Space" teachers receive special training as indicated in the material provided by Washoe County School District to teachers in a brave space power-point entitled LGBTQ Education Presentation for Brave Space.

8.     Plaintiff was also provided a copy of Brave Space training flyer for a 3-part seminar instruction to teachers stating "[D]on't miss your chance to help the students of Washoe County School District, by being someone they can come to with concerns. There is a new program in collaboration with Civil Rights Compliance, Counseling, and Equity and Diversity. This three-part course covers an introduction to the Brave Space program, a training segment on

offering support to LGBTQ+ students, and a training segment focused on the collective pursuit of cultural proficiency for all students, families and employees. Upon completion of all three courses, participants will be issued a Brave Space placard to display, indicating to students that you are a safe staff member to discuss matters pertaining to sensitive topics." *See My PGS.*

9.    Following Plaintiffs' investigation into the school's policies, it became clear that Minor J. Doe was being retaliated against and isolated in disciplinary proceedings and reprimanded individually, even though engaging in behavior with a group of students.

10.    Minor Doe, having no previous disciplinary issues prior to these incidents, now seemingly, having disciplinary issues at school and being sent to the principal's office repeatedly.

11.    It is clear that there has been retaliatory behavior towards minor J. Doe.

12.    The overreach of Washoe County School District has made it abundantly clear, that they are seeking to fracture the parent-child relationship, by inserting themselves into gender identity matters that are a gross violation of parental rights.

13.    Students seeking assistance and guidance at schools should be directed by that of parents/legal guardians and trained counselors who are licensed clinicians. No teacher should be able to go through a basic "training" and be deemed a "BRAVE Space" teacher.

14.    Unless and until Defendants, *inter alia*, a) publicly rescind the 5161, b) cease communicating to Washoe County School staff that parents are not to be notified and punishing staff who notify parents, c) publicly establish a policy that parents will be notified when children raise issues related to their mental health and discordant gender identity, d) cease meeting with children to provide counsel, advice and advocacy related to mental health and discordant gender identity without parental notice and consent, and e) cease deceiving parents by using one set of

names and pronouns when communicating with them and another at school, Plaintiffs'

fundamental rights to direct the upbringing of their children, to make decisions regarding their

children's medical and mental health, and right of familial privacy will continue to be violated.

15.     Defendants' ongoing violations of Plaintiffs' fundamental parental rights have

caused and will continue to cause irreparable harm unless and until discontinued.

## CLAIMS FOR RELIEF

### I.
### FIRST CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
**(Violation of Plaintiffs' Substantive Due Process Fundamental Parental Right to Direct the
Education and Upbringing of Their Children under the U.S. Constitution
(Against all Defendants)**

16.     Plaintiffs incorporate by reference the allegations of all paragraphs above as

though fully set forth herein.

17.     The Due Process Clause in the 14th Amendment to the United States Constitution

protects the fundamental right of parents to direct the education, upbringing and the care,

custody, and control of their children. *Pierce v. Society of Sisters*, 268 U.S. 510 (1925); *Troxel v.

Granville*, 530 U.S. 57, 68 (2000).

18.     Defendants have violated and are violating Plaintiffs' fundamental right to make

decisions regarding the upbringing, education, custody, care, and control of their children in

establishing and implementing the Protocol that prohibits informing parents regarding their

children's assertions regarding gender non-conformity, transgender status and attendant requests

to affirm alternate identities unless their minor children of any age consent.

19.     Defendants have acted and are acting with reckless disregard for Plaintiffs'

fundamental parental rights by purposefully and intentionally concealing critical information

regarding the upbringing and care of their children, *i.e.,* that the children are asserting a

discordant gender identity, that the children have requested to be addressed by an opposite sex name and pronouns and other information associated with affirming the child's assertions.

20.     Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights by continuing to implement the Protocol, *i.e., a de facto* school district policy of undermining parental authority based on an unsubstantiated assertion that state law and Washoe County School District Regulation provides that children of any age have the authority to determine whether their parents will be informed when they raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex. In so doing, Defendants are explicitly and intentionally excluding Plaintiffs from significant decision-making directly related to their children's care.

21.     Defendants' reckless disregard for Plaintiffs' rights has resulted in and is resulting in deprivation of their fundamental constitutional rights.

22.     Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

23.     Plaintiffs' constitutionally protected right to direct the upbringing and education of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender

pronouns and names for their peers and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

24.     Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the upbringing, care, and education of their children, and Defendants' prohibition against parental notification is not narrowly tailored.

25.     Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

26.     Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

## II.

### SECOND CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS 42 U.S.C. § 1983
### (Parental Exclusion)
### (Against All Defendants)

27.     Plaintiff incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

28.     The Fourteenth Amendment provides that no State shall "deprive any person of life, liberty, or property, without due process of law."

29.     Under binding precedent, the Amendment "includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'" *Troxel*, 530 U.S. at 65 (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997)). Among these unenumerated rights are those that are "'deeply rooted in this Nation's history and tradition'" and "'implicit in the concept of ordered liberty.'" *Dobbs v. Jackson Women's Health Org.*, 142 S. Ct. 2228, 2257-58 (2022) (quoting *Glucksburg*, 521 U.S. at 721).

30.     The "liberty interest . . . of parents in the care, custody, and control of their children[] is perhaps the oldest of the fundamental liberty interests recognized by [the Supreme]

Court." *Troxel*, 530 U.S. at 65. Nearly 100 years ago, the Supreme Court held that the "liberty" protected by the Fourteenth Amendment includes the right of parents to "establish a home and bring up children" and "to control the education of their own." *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

31.     Two years later, the Court held that the "liberty of parents and guardian" includes the right "to direct the upbringing and education of children under their control." *Pierce*, 268 U.S. at 534- 35 (1925). As the Court explained, "[t]he child is not the mere creature of the State; those who nurture him and direct his destiny have the right, coupled with the high duty, to recognize and prepare him for additional obligations." *Id*. at 535.

32.     Again and again, the Supreme Court has affirmed the "fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Troxel*, 530 U.S. at 66 (listing cases). Simply put, "[t]he history and culture of Western civilization reflect a strong tradition of parental concern for the nurture and upbringing of their children." *Yoder*, 406 U.S. at 232. "This primary role of the parents in the upbringing of their children is now established beyond debate as an enduring American tradition." *Id*.

33.     Reg 5161 violates parents' constitutional rights and deprives parents of their right to know what actions WCSD is taking with regards to fundamentally important decisions about their children.

34.     Parents are entitled to ask on a regular basis whether their children have requested or have engaged in "Brave Space" advice, whether their children have made requests or actions have been taken concerning their children's gender identity, and whether the WCSD has any other information that would reveal their children's "transgender status." Yet under the Reg 5161, the School District *will not tell them* any of this information. It is impossible for parents to direct the "care, custody, and control of their children" when the government and Washoe County School District withholds critical information from them.

35.     Regulation 5161 also deprives parents of the right to have any input or control over fundamental decisions concerning gender identity. Under the Regulation, the parent has no control over how WCSD treats their child.

36.     Without *any* parental input, the District can (1) require all employees and students to address the child by a new name; (2) require all employees and students to address the child through a new pronoun; (3) have the child's name changed on numerous government documents, including identification cards, yearbooks, and diplomas; (4) allow the child to use the restrooms, locker rooms, and changing facilities that correspond with the child's gender identity; (5) allow the child to participate in physical education classes, intramural sports, clubs, and other events that correspond with the child's gender identity; and (6) allow the child to room with other students who share the child's gender identity. These are *fundamental decisions* implementing the most basic questions about a child's life, including issues of religion, medical care, mental and emotional well-being, the child's sense of self, and more.

37.     A recent decision from the District of Kansas is directly on point. There, a local school board policy prohibited teachers from "revealing to a student's parents a preferred name or pronouns the student is using at school if the student has not authorized the parents to know." *Ricard v. USD 475 Geary County, KS*, 2022 WL 1471372, at *4-5 (D. Kan. May 9, 2022). Discussing the "constitutional right [of parents] to control the upbringing of their children," the court found it inconceivable that a school district could constitutionally "withhold[] or conceal[] from the parents of minor children information fundamental to a child's identity, personhood, and mental and emotional well-being such as their preferred name and pronouns." *Id*. at *8. Whether "the District likes it or not," the constitutional right of parents "includes the right of a parent to have an opinion and to have a say in what a minor child is called and by what pronouns they are referred." *Id*.

38.     Washoe County School District may be concerned that some parents are unsupportive of their child's desire to be referred to by a name other than their legal name, to use different pronouns, or to implement other decisions involving gender identity. But this "merely proves the point that the District's claimed interest is an impermissible one because it is intended to interfere with the parents' exercise of a constitutional right to raise their children as they see fit." *Id.*

39.     The government must afford a "presumption of validity" to parental decisions unless there is clear evidence to the contrary. *Troxel, 530 U.S. at 67*. As "long as a parent adequately cares for his or her children (*i.e.,* is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." *Id. at 68-69; see Ricard, 2022 WL 1471372, at *8* (envisioning a "particularized and substantiated concern that disclosure to a parent could lead to child abuse, neglect, or other *illegal* conduct"). But "[s]imply because the decision of a parent is not agreeable to a child … does not automatically transfer the power to make that decision from the parents to some agency or officer of the state." *Parham, 442 U.S. at 60.*

40.     Here, the District "not only fail[s] to presume" that parents will "act in the best interest of their children, [it] assume[s] the exact opposite." *Doe v. Heck*, 327 F.3d 492, 521 (7th Cir. 2003). The District has *no right* to deprive parents of this critical information and control concerning their child. The Policy plainly violates the Fourteenth Amendment.

41.     Washoe County School District adopted this policy "under color of state law" within the meaning of Section 1983.

42.     Defendants cannot satisfy strict scrutiny, because their arbitrary classifications are not narrowly tailored measures that further compelling government interests, for the reasons stated above.

43.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

44.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

45.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

46.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

### III.
### THIRD CLAIM FOR RELIEF
### VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983
### (Violation of Plaintiffs' Fundamental Parental Right to Direct the Medical and Mental Health Decision-making for Their Children Under the U.S. Constitution)
### (Against all Defendants)

47.     Plaintiff incorporate by reference the allegations of all paragraphs above as though fully set forth herein.

48.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the fundamental right of parents to direct the medical and

49.     Defendants have violated and are violating Plaintiffs' fundamental right to make decisions regarding the mental health of their children by adopting the Regulation providing that a) parents are not to be notified if their children express a discordant gender identity; b) parents are presumed to pose a danger to their child's health and well-being if notified of their child's gender confusion or discordant gender identity; c) parents are not to be included in meetings with their children to discuss changes to be made in response to the children's assertion of a discordant gender identity unless the child consents; d) parents are to be intentionally misled and lied to when school staff discuss their children, in that staff are to use the children's legal name and biologically accurate pronouns when talking to parents but not in other circumstances; e) children are to be permitted to decide which privacy facilities they will use without the involvement of their parents.

50.     Affirming a child's discordant gender identity involves significant mental health and medical decisions affecting the well-being of children with potentially life-long consequences. Therefore, by excluding parents from discussions regarding their children's assertion of a discordant gender identity and adopting the Protocol aimed at secretively affirming the discordant gender identity, Defendants are making, and have made decisions that affect the mental health of Plaintiffs' children in contravention of Plaintiffs' fundamental rights as enumerated in the U.S. Constitution and Nevada law.

51.     Defendants have acted and are acting with reckless disregard for Plaintiffs' fundamental parental rights by withholding information regarding their children's mental health based on an unsubstantiated assertion that state law, regulations grant children rights of confidentiality that prohibit disclosing information regarding gender identity to their own parents, thereby explicitly and intentionally excluding Plaintiffs from making the mental health decisions for their children that are exclusively their right to make.

52.    Defendants' reckless disregard for Plaintiffs' rights has resulted in and continues to result in deprivation of their fundamental constitutional rights.

53.    Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

54.    Plaintiffs' constitutionally and statutorily protected rights to make decisions regarding the mental health of their children was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

55.    Defendants cannot assert a compelling interest for disregarding Plaintiffs' long-established fundamental constitutional right to direct the medical and mental health care for their child, and Defendants' prohibition against parental notification is not narrowly tailored.

56.    Defendants' violation of Plaintiffs' fundamental constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm.

57.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

58.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

59.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**IV.**
**FOURTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**Violation of the First Amendment**
**(Compelled Speech)**
**(Against All Defendants)**

60.    Plaintiff incorporate by reference the allegations of all paragraphs above as though fully set forth herein.

61.    The Supreme Court has "held time and again that freedom of speech 'includes both the right to speak freely and the right to refrain from speaking at all.'" *Janus v. Am. Fed'n of State, Cnty., & Mun. Emps., Council 31*, 138 S. Ct. 2448, 2463 (2018). "[T]he latter is perhaps the more sacred of the two rights." *Telescope Media Grp. V. Lucero*, 936 F.3d 740, 752 (8th Cir. 2019).

62.    "If there is any fixed star in our constitutional constellation, it is that no official, high or petty, can prescribe what shall be orthodox in politics, nationalism, religion, or other matters of opinion or *force citizens to confess by word or act their faith therein*." *West Virginia Bd. Of Ed. V. Barnette,* 319 U.S. 624, 642 (1943) (emphasis added). "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Janus*, 138 S. Ct. at 2463.

63.    The Policy is no different from the policy requiring schoolchildren to pledge alliance to the flag in *Barnette*. Like the West Virginia State Board of Education in *Barnette*, *cf.* 319 U.S. at 631, 633, Washoe County School District is requiring students to affirmatively declare statements that they believe to be false and affirm ideologies with which they deeply disagree or otherwise face discipline under Administrative Regulation 9200.

64.    *Meriwether v. Hartop*, 992 F.3d 492 (6th Cir. 2021), is directly on point. There, the Sixth Circuit held that a similar "preferred pronoun" requirement was "anathema to the principles underlying the First Amendment." *Id.* at 510. "Indeed, the premise that gender identity is an idea 'embraced and advocated by increasing numbers of people is all the more reason to protect the First Amendment rights of those who wish to voice a different view.'" *Id.* (quoting *Boy Scouts of Am. V. Dale*, was a content-based regulation subject to strict scrutiny).

65.    In addition, "the First Amendment's hostility to content-based regulation extends" to "restrictions on particular viewpoints." *Reed v. Town of Gilbert*, 135 S. Ct. 2218, 2230 (2015). Viewpoint discrimination is flatly prohibited. *See Iancu v. Brunetti*, 139 S. Ct. 2294, 2302 (2019); *Mahanoy*, 141 S. Ct. at 2046 (schools cannot "suppress speech simply because it is unpopular").

66.    Here, Washoe County School District has adopted a policy that disciplines students for the content and viewpoint of their speech. Specifically, Reg 5161 prohibits "an intentional and/or persistent refusal to respect a student's gender identity."  Reg 5161 also prohibits "misgendering," which it defines as instances "[w]hen a person accidentally or intentionally uses the incorrect name or pronouns to refer to a person." This is a classic content-based and viewpoint-based regulation of speech. *See, e.g., Saxe v. State College Area School District*, 240 F.3d 200, 206 (3d Cir. 2001) (bans on "'harassment'" covering speech impose "'content-based'" and often "'viewpoint-discriminatory'" restrictions on that speech).

67.     Washoe County School District has no compelling interest in suppressing this type of student speech, and, even if it did, the District's restrictions are not narrowly tailored to further that interest. *See Mahanoy*, 141 S. Ct. at 2046; *see also Willson v. City of Bel-Nor, Missouri*, 924 F.3d 995, 1001 (8th Cir. 2019).

68.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

69.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

70.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

71.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**V.**
**FIFTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**Violation of the First Amendment**
**(Overbreadth)**
**(Against All Defendants)**

72.     Plaintiff incorporate by reference the allegations of all paragraphs above as though fully set forth herein.

73.     The First Amendment also prohibits the government from adopting regulations of

students that are "so broad as to chill the exercise of free speech and expression." *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995). "Because First Amendment freedoms need breathing space to survive, a state may regulate in the area only with narrow specificity." *Gooding v. Wilson*, 405 U.S. 518, 522 (1972). Schools must carefully craft their regulations "to punish only unprotected speech and not be susceptible of application to protected expression." *Id*.

74.    Reg 5161 and 9200 are unconstitutionally overbroad. By its terms, the Regs apply to protected speech and virtually any opinion or political belief—as well as any use of humor, satire, or parody— could be perceived as "a refusal … to respect a student's gender identity."

75.    Regs 5161 and 9200 also do not differentiate between "on campus" and "off campus" speech, even though the District's ability to punish off-campus speech is extremely limited. *See Mahanoy*, 141 S. Ct. at 2046. Courts regularly find these types of far-reaching school policies to be unconstitutionally overbroad. *See, e.g., Saxe*, 240 F.3d at 215-16 (high school speech policy punishing "harassment" was overbroad because it "prohibit[ed] a substantial amount of non-vulgar, non-sponsored student speech"); *Flaherty v. Keystone Oaks School Dist.*, 247 F. Supp. 2d 698, 701-02 (W.D. Penn. 2003) (speech policy prohibiting "abusive," "inappropriate," and "offen[sive]" language was overbroad).

76.    All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

77.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

78.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

79.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**VI.**
**SIXTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**Violation of the First and Fourteenth Amendments**
**(Void for Vagueness)**
**(Against All Defendants)**

80.     Plaintiff incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

81.     "It is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). "[T]he vagueness doctrine has two primary goals: (1) to ensure fair notice to the citizenry and (2) to provide standards for enforcement [by officials]." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007); *see also Stephenson v. Davenport Cmty. Sch. Dist.*, 110 F.3d 1303, 1311 (8th Cir. 1997) ("a central purpose of the vagueness doctrine" is to prevent "arbitrary and discriminatory enforcement").

82.     "With respect to the first goal, … '[a] statute which either forbids or requires the doing of an act in terms so vague that [individuals] of common intelligence must necessarily

guess at its meaning and differ as to its application, violates the first essential of due process of law.'" *Ass'n of Cleveland Fire Fighters*, 502 F.3d at 551 (quoting *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1925)). "With respect to the second goal, … 'if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them. A vague law impermissibly delegates basic policy matters to [officials] for resolution on an ad hoc and subjective basis.'" *Id.* (quoting *Grayned*, 408 U.S. at 108-09).

83.     This principle of clarity is especially demanding when First Amendment freedoms are at stake. If the challenged law "interferes with the right of free speech or of association, a more stringent vagueness test should apply." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 499 (1982). "Certainty is all the more essential when vagueness might induce individuals to forego their rights of speech, press, and association for fear of violating an unclear law." *Scull v. Va. ex rel. Comm. on Law Reform & Racial Activities*, 359 U.S. 344, 353 (1959).

84.     The Policy, among other things, lacks any definitions, detail, context, or notice to students about what sorts of statements WCSD views as "an intentional or persistent refusal … to respect a student's gender identity." This provision guarantees arbitrary enforcement and is therefore unconstitutional.

85.     All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

86.     Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

87.     Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

88.     Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**VII.**
**SEVENTH CLAIM FOR RELIEF**
**VIOLATION OF CIVIL RIGHTS, 42 U.S.C. § 1983**
**(Violation of Plaintiffs' Right to Familial Privacy Under the U.S. Constitution)**
**(Against all Defendants)**

89.     Plaintiff incorporates by reference the allegations of all paragraphs above as though fully set forth herein.

90.     The Due Process Clause in the 14th Amendment to the United States Constitution protects the sanctity of the family as an institution deeply rooted in this Nation's history and tradition through which moral and cultural values are passed down. *Moore v. East Cleveland*, 431 U.S. 494, 503-04 (1977). The Constitution protects the private realm of the family from interference by the state. *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944).

91.     In substituting their judgment regarding the mental health of Plaintiff, and other Washoe County Schools students for the judgment of their parents by implementing the Regulation to withhold information regarding children's assertion of a discordant gender identity and request to affirm that identity without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by usurping Plaintiffs' rights to make decisions regarding their children's upbringing, mental health, and well-being.

92.     In substituting their judgment for the judgment of parents by refusing to inform parents when their children disclose a discordant gender identity and seek affirmation of the identity at school without notifying the parents, Defendants have impermissibly inserted themselves into the private realm of Plaintiffs' families by depriving Plaintiff, and other minor Washoe County Schools students of their right to have decisions regarding their upbringing, mental health and well-being made by their parents.

93.     Defendants have infringed Plaintiffs' right to family privacy by implicitly informing children that their parents cannot be trusted to be informed of or involved in decision-making related to their children's assertion of a discordant gender identity. Defendants have explicitly evidenced their hostility and intent to infringe upon family privacy through public statements that Defendants' schools are the only safe space for many children and that parental concerns about children's assertions of discordant gender identities are rooted in bigotry.

94.     Through their implementation of Reg 5161 and 9200, punishment of teachers who do not comply with it, and public statements denigrating parents who disagree with Regs 5161 and 9200, Defendants are nurturing significant seeds of doubt within children's minds about whether their parents are acting in their best interests. In so doing, Defendants are sowing discord and division in the parent-child relationships and violating Plaintiffs' rights to family privacy.

95.     Defendants have acted and are acting with reckless disregard for Plaintiffs' rights to family privacy by their actions in intentionally casting doubt on parents' support and ability to respond appropriately to their children's expression of discordant gender identities and excluding parents from decision-making related to their children's questions regarding their sex and gender identity.

96.     Defendants' deliberate indifference to Plaintiffs' rights has resulted in and continues to result in deprivation of their constitutional rights to family privacy.

97.     Plaintiffs' constitutionally protected rights to familial privacy were violated as the plainly obvious consequence of Defendants' actions in intentionally and explicitly withholding information in accordance with the Protocol, *i.e.*, a *de facto* school policy that parents were not to be notified when their children raise issues of gender non-conformity or transgender status, request to be called by an alternative name or pronouns and even use privacy facilities designated for the opposite sex.

98.     Plaintiffs' constitutionally protected right to family privacy was violated as the plainly obvious consequence of Defendants' actions in, *inter alia,* a) meeting secretly with their children to engage in counseling and advocacy related to mental health and discordant gender identity without parental notice and consent, b) deceiving parents by using one set of names and pronouns when communicating with them and another at school, c) directing children to speak untruthfully by instructing them to use alternate gender pronouns and names for their peers, and d) nurturing distrust for parents through secret meetings in which parents' decisions and ability to provide for their children are questioned.

99.     Defendants cannot assert a compelling state interest for recklessly disregarding Plaintiffs' constitutional rights to familial privacy, and Defendants' prohibitions against parental notification and involvement in children's mental health decisions related to gender identity are not narrowly tailored.

100.     Defendants' violation of Plaintiffs' constitutional rights has caused and continues to cause Plaintiffs undue hardship and irreparable harm in that Plaintiffs have been and are being denied their right to direct decisions concerning the upbringing and mental health care for their children without interference from the state, and their children are denied the right to have upbringing and mental health decisions made by their parents in keeping with their family values and sincerely held religious beliefs.

101.    Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their fundamental rights.

102.    All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

103.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

104.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

105.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

**VIII.**
**EIGHTH CLAIM FOR RELIEF**
**Violation of Civil Rights, 42 U.S.C. § 1983**
**(Free Exercise of Religion Under the U.S. Constitution)**
**(Against all Defendants)**

106.    Plaintiffs incorporate by reference the allegations of all paragraphs above as though fully set forth herein.

107.    The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits Defendants from abridging Plaintiffs' right to free exercise of religion.

108.    Plaintiffs have sincerely held religious beliefs that human beings are created male or female and that the natural created order regarding human sexuality cannot be changed regardless of individual feelings, beliefs, or discomfort with one's identity, and biological reality, as either male or female.

109.    Plaintiffs have sincerely held religious beliefs that parents have the non-delegable duty to direct the upbringing and beliefs, religious training, and medical and mental health care of their children and any intrusion of the government into that realm infringes upon the free exercise of their religion.

110.    Plaintiffs have sincerely held religious beliefs that all people are to be treated with respect and compassion, and that respect and compassion do not include misrepresenting an individual's natural created identity as either a male or a female.

111.    Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

112.    Defendants' actions in excluding Plaintiffs from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

113.    Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children are or might be undergoing and denying them the opportunity to seek counseling and guidance for their children in a manner that is consistent with the beliefs sincerely held by their family instead of the government.

114.    Defendants' actions are coercive in that they deliberately supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to direct their children's mental health care and counseling regarding sex and gender identity in

accordance with their values because Defendants have substituted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

115.    Defendants' actions are neither neutral nor generally applicable, but rather, specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

116.    No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

117.    Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

118.    Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

119.    Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable

120.    Plaintiffs have sincerely held religious beliefs that individuals are to speak the truth, including speaking the truth regarding matters of sexual identity as a male or female.

121.    Defendants' actions in excluding Plaintiffs from decision making regarding their children's sexual and gender identity target the Plaintiffs' beliefs regarding the created order, human nature, sexuality, gender, ethics, and morality which constitute central components of their sincerely held religious beliefs.

122.    Defendants' actions have caused a direct and immediate conflict with Plaintiffs' religious beliefs by prohibiting them from being informed of mental health issues their children

are or might be undergoing and seeking counseling and guidance for their children in a manner that is consistent with the beliefs held by their family instead of the government.

123.    Defendants' actions are coercive in that they deliberately usurp and supplant Plaintiffs' role as advisors of the moral and religious development of their children so that they are not able to instruct their children regarding sex and gender identity in accordance with their values because Defendants have substituted the state's perspective on the issues of sex and gender identity for the perspective of Plaintiffs in violation of Plaintiffs' free exercise rights.

124.    Defendants' actions are neither neutral nor generally applicable, but rather specifically and discriminatorily target the religious speech, beliefs, and viewpoint of Plaintiffs and thus expressly constitute a substantial burden on sincerely held religious beliefs that are contrary to Defendants' viewpoint regarding gender identity and affirmation of a discordant gender identity.

125.    No compelling state interest justifies the burdens Defendants have imposed and are imposing on Plaintiffs' rights to the free exercise of religion.

126.    Defendants' actions are not the least restrictive means to accomplish any permissible government purpose Defendants seek to serve.

127.    Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer undue and actual hardships.

128.    Defendants' violation of Plaintiffs' rights to free exercise of religion has caused, is causing, and will continue to cause Plaintiffs to suffer irreparable injury. Plaintiffs have no adequate remedy at law to correct the continuing deprivation of their most cherished constitutional liberties.

129.    All of the actions taken by Defendants and/or those acting on behalf of Defendants and referred to herein, were done by Defendants while acting under color or state of

law and had the effect of depriving Plaintiffs of rights secured by the Constitution and laws of the United States.

130.    Plaintiffs have no adequate remedy at law and will suffer serious and irreparable harm to their constitutional rights unless Defendants are enjoined from implementing and arbitrarily enforcing Reg 5161.

131.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to declaratory relief and temporary, preliminary, and permanent injunctive relief invalidating and restraining enforcement of the Reg 5161.

132.    Plaintiffs found it necessary to engage the services of private counsel to vindicate their rights under the law. Plaintiffs are therefore entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

## DEMAND FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff and against Defendants and provide the following relief:

A.    A declaratory judgment that Defendants' Regulations 5161 and 9200 violate the First. Fifth and Fourteenth Amendments;

B.    A preliminary injunction barring Defendants from enforcing Regulations 5161 and 9200;

C.    A permanent injunction barring Defendants from enforcing the Regulations 5161 and 9200;

D.    Plaintiff's reasonable costs and expenses of this action, including attorneys' fees, per 42 U.S.C. §1988 and all other applicable laws;

E.    Award Plaintiffs damages arising out of their Section 1983 Claims, and

F.    For an award of reasonable attorney's fees and his costs on his behalf

expended as to such Defendants pursuant to the Civil Rights Act of 1871, 42 U.S.C.

Section 1988.

G.      Such other relief as the Court deems just and proper.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all counts so triable.

Dated this __27th__ day of March, 2023

**CHATTAH LAW GROUP**

*/s/ Sigal  Chattah*

SIGAL CHATTAH, ESQ.
Nevada Bar No.: 8264
CHATTAH LAW GROUP
5875 S. Rainbow Blvd. #203
Las Vegas, Nevada 89118
Tel.:(702) 360-6200
**Attorney for Plaintiffs**


**JOEY GILBERT LAW**
 */s/ Joseph S. Gilbert*
JOSEPH S. GILBERT, ESQ.
JOEY GILBERT LAW
Nevada State Bar No.: 9033
405 Marsh Avenue
Reno, Nevada 89501
Tel: (775) 210-1501
**Attorney for Plaintiffs**